IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

## CASE NO. 22-11153

## UNITED STATES OF AMERICA,

### Plaintiff-Appellee,

### vs.

## JEFFREY BOONE,

### Defendant-Appellant.

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORDA    CASE No. 3:21-cr-00071-MCR**

## IINITAL BRIEF FOR APPELLANT
## JEFFREY BOONE

Sheryl J. Lowenthal, Atty at Law
Counsel on Appeal for Mr. Boone
221 East Government Street
Pensacola, Florida 32502-6018
Phone: 850-912-6710
The Florida Bar No. 163475
E-Mail:  sjlowenthal@appeals.net

South Florida Office
9130 S Dadeland Blvd. Suite 1511    Miami FL 33156    305-670-3360

## CERTIFICATE OF INTERESTED PERSONS

Appellant JEFFREY BOONE, through counsel, and pursuant to the  Federal Rules of Appellate Procedure  and the Eleventh Circuit Local Rules, submits the following list of all persons and entities who have, or may have an interest in the outcome of this appeal (Judicial Officers, Attorneys, & Parties, followed by victims:

### *Parties, Attorneys, and Judicial Officers*

Boone, Jeffrey W.                          Defendant/Appellant

Cannon, Hon. Hope T.                 United States Magistrate Judge

Coody, Jason                               United States Attorney

Goldberg, David L.                      Assistant United States Attorney

Gordon, Amanda                        Assistant United States Attorney

Hendrix, Michelle                       Trial Counsel for Mr. Boone

Lowenthal, Sheryl J.                   CJA Appellate Counsel for Mr. Boone

Rodgers, Hon. M. Casey             United States District Judge

Timothy, Hon. Elizabeth M.        United Stajnhhytes Magistrate Judge

U.S. Attorney Service                 Northern District of Florida

C1 of 2

***United States v. Boone***
***Certificate of Interested Persons, Cont'd***

***Victims (from the Appellee's CIP)***

| | |
|---|---|
| A.C.B. | Female 5 YO Minor Victim |
| D.T. | Male 31 YO Victim |
| E.W. | Female 24 YO Victim |
| K.F. | Female 32 YO Victim |
| K.M. | Female 23 YO Victim |
| N.T. | Male 36 YO Victim |
| S.A. | Female 36 YO Victim |
| D.M.W. | Female 15 YO Minor Victim |

Respectfully submitted,

*/s/ Sheryl J. Lowenthal*

Sheryl J. Lowenthal
CJA Appellate Counsel
for Appellant Jeffrey W. Boone
Florida Bar No. 163475
Email:  sjlowenthal@appeals.net

C2 of 2

STATEMENT REGARDING ORAL ARGUMENT

In most appeals it is beneficial for the judges on the panel to have the opportunity to discuss in person with counsel for the parties, those aspects of the case that are of greatest interest or concern to the Court.  Appellant leaves the decision whether to schedule an oral argument in this appeal to the sound discretion of the Court.

TABLE OF CONTENTS AND CITATIONS

CERTIFICATE OF INTERESTED PERSONS                                      C1 of 2

STATEMENT REGARDING ORAL ARGUMENT                              i

TABLE OF CONTENTS & CITATIONS                                         i

STATEMENT OF SUBJECT MATTER
   & APPELLATE JURISDICTION                                          1

   Appellant's Status of Incarceration                              1

   Record References                                                2

STATEMENT OF THE ISSUE PRESENTED                                 2

STATEMENT OF THE CASE

   Course of Proceedings and Disposition in the District Court      3

     Plea Agreement and Statement of Facts in Support of Plea      4

     The Change of Plea Hearing                                    8

i

The Sentencing Memorandum                                                    9

Grandmother's Letter to the Court                                           12

The Sentencing Hearing                                                      14

The Standards of Review                                                     17

SUMMARY OF THE ARGUMENT                                                     18

ARGUMENT & AUTHORITIES

  *It Was Reversible Error And an Abuse of Discretion (1) For the*
  *Court To Approve the The  Five-Level Offense Level Increase*
  *For "Pattern Of Activity" Pursuant to U.S.S.G. Section 2G2.2(b)*
  *(5)  Based  Two or Three Images Sent Via Internet all Involving*
  *the Same Victim in the Same Clothing at Around the Same Time;*
  *and (2) to consider Mr. Boone's Military Service as an Aggravating*
  *Rather than a Mitigating Factor in Determining his Sentence.* 20

CONCLUSION                                                                  26

COMPLIANCE WITH TYPE STYLE & WORD COUNT                                     27

CERTIFICATE OF SERVICE & ECF FILING                                         27

TABLE OF CITATIONS

**Cases**:

Gall v. United States, 552 U.S. 38 (2007)                                   17

United States v. Fox, 926 F.3d 1275 (11th Cir. 2019)                        24

United States v. Moran, 778 F.3d 942 (11th Cir. 2015)                       17

United States v. Vail-Bailon, 868 F.3d 1293 (11th Cir. 2017) ................... 17

United States v. Villareal, 613 F.3d 1344 (11th Cir. 2010) ..................... 17

United States v. $70,670 United States Currency, 929 F.3d 1293
    (11th Cir. 2019) ............................................................................ 17


The United States Code

    Title 18, Section 2251(a) ............................................................... 3

    Title 18, Section 2252(e) ............................................................... 3

    Title 18, Section 2252A(a)(2) ........................................................ 3

    Title 18, Section 2252A(a)(5)(B) ................................................... 3

    Title 18, Section 2252A(b)(1) ....................................................... 3

    Title 18, Section 2252A(b)(2) ....................................................... 3

    Title 18, Section 2256(8)(A) ......................................................... 3

    Title 18, Section 3231 ................................................................... 1

    Title 18, Section 3553(a) ............................................................... 26

    Title 28, Section 1291 ................................................................... 1


United States Sentencing Guidelines

    Section 4B1.5 ........................................................................... 2, 25

STATEMENT OF SUBJECT MATTER
& APPELLATE JURISDICTION

Jeffrey Boone takes this appeal from a final judgment and sentence to 840 months (70 (seventy) years imprisonment) following his guilty plea to production, distribution, and possession of child pornography charged in the Northern District of Florida, Pensacola Division,

The judgment was entered on March 29, 2022 (DE-48). A notice of appeal was timely filed on April 8, 2022 (DE-50). Undersigned was appointed for purposes of appeal. This appeal ensues.

This Court has jurisdiction over the appeal pursuant to 28 U.S.C. Section 1291. The Northern District of Florida had jurisdiction over the case pursuant to 18 U.S.C. Section 3231.


**Appellant's Status of Incarceration**

Mr. Boone is presently incarcerated at the Federal Correctional Institution Petersburg Medium FCI, in Hopewell, Virginia.

1

**Record References**

In this brief, references to documents and transcripts in the Record on Appeal will be denoted as DE for Docket Entry followed by the docket number, and then as necessary, page number(s) within the document.   There are 68 docket entries, that include two transcripts:  the change of plea proceedings on November 18, 2021 at DE-65, and the sentencing hearing on March 25, 2022 at DE-62.

STATEMENT OF THE ISSUE PRESENTED

It was reversible error and an abuse of discretion (1) for the court to approve the five-point offense-level increase for "pattern of activity" pursuant to U.S.S.G. Section 4B1.1(5) based on two or three images sent via internet all involving the same victim in the same clothing at around the same time; and (2) to consider Mr. Boone's military service as an aggravating rather than a mitigating factor in determining his sentence.

STATEMENT OF THE CASE

**Course of Proceedings and Disposition in the District Court**

In October 2021, a three-count indictment was returned in the Northern District of Florida (DE-15), charging  Jeffrey W. Boone, Jr., in Count 1 with production of child pornography in violation of 18 U.S.C. Sections 2251(a) and 2252(e); in Count 2 with  distribution of child pornography in violation of 18 U.S.C. Section 2256(8)(A) and Sections 2252A(a)(2) and 2252A(b)(1); and in Count 3 with possession of child pornography involving a minor under the age of 12 years old, in violation of 18 U.S.C. Sections 2252A(a)(5)(B) and 2252A(b)(2).   The indictment also included a forfeiture allegation (DE-15: 1-5).

The matter was referred to the United States Magistrate Judge for Rule 11 proceedings.  A hearing was set (DE-24, 25).  On November 18, 2021, Mr. Boone consented to a plea before the Magistrate Judge.  He entered into a written plea agreement and a written factual proffer (DE-26-29).  Following the plea hearing the Magistrate Judge entered a Report and Recommendation recommending that the plea be accepted (DE-31).  The plea was accepted (DE-32).

A draft presentence report was prepared.  A final report was prepared with victim impact statements attached  (DE-36, 38). Mr. Boone  submitted responses to

3

the presentence report, on March 3rd, March 11th, and March 22nd (DE-41, 42, 43). The sentencing hearing was held on March 25, 2022 (DE-45).

The Court imposed sentences for Counts 1, 2, and 3, to run consecutively (360 months, plus 240 months, plus 240 months) for a total of 840 months (70 years), followed by lifetime supervised release, a special assessment of $300 ($100 for each count), restitution in the amount of $12,000, and a final order of forfeiture (DE-45-48). A Statement of Reasons was filed (DE-49).

### *The Plea Agreement*<br>*and Written Statement of Facts in Support of the Plea*

The written plea agreement between Mr. Boone, his attorney, and the United States Attorney for the Northern District of Florida, provided that Mr. Boone would plead guilty to Count 1 (production), Count 2 (distribution), and Count 3 (possession) of child pornography as charged (DE-28:1). Count 1 carried a minimum mandatory term of 15 years to 30 years' imprisonment; Count 2 carried a minimum mandatory term of five years up to 20 years' imprisonment; and Count 2 carried a term of imprisonment up to 20 years (DE-28: 1, 2). The plea agreement enumerated the constitutional rights that were waived by the plea (DE-28: 2-3).

4

The agreement said that Boone was pleading guilty because he was in fact guilty of the three charges, and if the case went to trial the Government could present evidence to support the charges beyond a reasonable doubt (DE-28: 3)

Sentencing was left solely to the discretion of the court after considering the Sentencing Guidelines. The court's sentencing discretion was limited only by the statutory maximum and any mandatory minimum term prescribed by statute for the offenses (DE-28: 4). The parties reserved the right to appeal the sentence (DE-28: 4). Boone agreed to make full restitution to the victims, if applicable, as determined by the court (*Ibid*).

The Factual Basis for the Guilty Plea stated in pertinent part that "Kik Messenger" is an instant messaging application (app) for mobile devices, available free of charge on most IOS, Android, and Windows phone operating systems. Kik uses the smartphone's data plan or WiFi to transmit and receive messages, allowing users to share photos, mobile webpages, linked internet files, and other content (DE-29: 1).

The factual statement continued, that on October 1, 2021, an FBI online covert employee (the OCE) accessed a Kik communication group. A Kik user with the username "younginsboo" distributed a private message containing child pornography. "Younginsboo" sent a private message to the undercover agent containing an

5

image depicting an adult male with his penis exposed from a pair of camouflage shorts, and a prepubescent female kneeling on a bed holding onto the adult's erect penis. The child is wearing a distinctive outfit with pine trees on it. Present in the image are navy blue bedsheets and some clothing on the floor. The female child was less than ten years old (DE-29: 1-2).

On the same day "youingsboo" sent a second private message to the undercover agent containing an image of what appeared (based upon the same outfit), to be the same child. In the background were the navy blue bedsheets. The adult male with the erect penis was wearing the same camouflage shorts. The child's face was exposed. She was holding onto the erect penis (*Ibid*). On the same day, "younginsboo" sent a third private message to the undercover agent stating, "Soon I'll have a video for you." The  agent asked: "What do you mean?" Kik user "youngisboo" replied: "We should get some play time soon." The response: "You with her?" The reply: "mmm hmmm." (*Ibid*.)

According to the factual statement, on the same day (October 1 2021), "younginsboo" sent the undercover agent another private message: "Waiting for my wife to leave," and then a purple devil emoji, and an image of the prepubescent female standing on a bed with her pants pulled down showing her purple underwear and her shirt spread open exposing her bare stomach area and navy blue bedsheets in the background (DE-29: 2, 3).      6

The undercover agent believed that the images of the child were made just before they were sent and that "younginsboo" had access to a female child. Based on reviewing the images, agents believed all of the images depicted the same child (DE-29: 3).

The FBI obtained subscriber records from Kik for "younginsboo" including his IP address and his email address (bjonneffry@yahoo.com). They obtained subscriber records from Cox Communications for the IP address, including the name Jeffrey Boone at an address in Shalimar, Florida (DE-29: 3, 4). They confirmed that Jeffrey Boone who lived at that address was active-duty military (DE-29:4).

Later that evening, a United States Magistrate Judge issued a search warrant for the Boone residence. Law enforcement officers executed the warrant that night. They found Mr. Boone in the house with the minor child, and the navy blue bedsheets. Boone was wearing the camouflage shorts. The child was wearing the outfit seen in the child pornography images. On Boone's electronic device law enforcement located video and images of his production of child pornography involving the minor child, along with other unrelated child pornography images, and the Kik app with the username "younginsboo." (DE-29: 4).

The final portion of the factual statement set forth the elements of the offenses: Count 1: (1) defendant employed, used, persuaded, induced, enticed or coerced the

7

minor victim to engage in sexually explicit conduct; (2) at the time the victim was under the age of eighteen; (3) the defendant acted with the purpose of producing a visual depiction of the conduct; and (4) the visual depiction was actually transported in or affecting interstate commerce (DE-29: 5).

The elements for Counts 2 and 3 were that the defendant can be found guilty only if: (1) he knowingly distributed or possessed an item or items of child pornography; (2) the child pornography was transported, shipped, or mailed in interstate or foreign commerce by using a facility such as a computer or cellular telephone;  and (3) when defendant distributed or possessed the item(s) he believed they were, or contained, child pornography.

### The Change of Plea Hearing

On November 18, 2021, the change of plea proceeding was conducted by the United States Magistrate Judge (DE-65: 1-16).  During the colloquy the court ascertained that Mr. Boone consented to enter his plea before the Magistrate Judge (DE-65: 2, 3).  He was 32 years old, had completed some college courses, was a United States citizen having been born in Maryland and was living in Shalimar, Florida at the time of his arrest.  He was active military, married with three children ages 11, 6, and 4.  He had not been treated for mental illness and was taking no medications (DE-65: 5).  The Court discussed the rights he was waiving by pleading

guilty. Mr. Boone said he understood (DE-65: 5-7). He was satisfied with his attorney's representation (DE-65: 7). He acknowledged and agreed with the facts in the written proffer (DE-65: 7-9). Mr. Boone agreed that he had read and discussed with counsel the potential sentences and the US Sentencing Guidelines (DE-65: 10-13).

The Magistrate Judge found that Mr. Boone was alert, intelligent, and understood the nature of the charges and the consequences of his plea, and facts he admitted under oath were sufficient to support the plea. He was aware of the effect of the sentencing guidelines and the penalties. He made his decision freely, voluntarily, and knowingly with advice of counsel. He entered his plea of guilty (DE-65: 15). The Report and Recommendation recommended that the district court accept the plea (DE-31). The district court accepted the plea (DE-32).

### The Sentencing Memorandum

The defense submitted a sentencing memorandum on March 11, 2022, stating that Mr. Boone accepted responsibility for his crimes and timely entered a plea of guilty. He was facing a guidelines' recommended sentence of Life, but the defense requested a downward variance to comply with the purposes of sentencing and the factors set forth in 18 U.S.C. Section 3553 (DE-42:1).

The guideline sentence was Life. The statutorily authorized maximum sentences were lower, specifically 840 months, which was calculated by running

consecutively the maximum sentence for each offense (360 months, 240 months, and 240 months). In calculating the guidelines, a five-level enhancement was added for "pattern of conduct." The alleged "pattern" was sending three images over two-days involving a single victim. Appellant notes that the indictment alleged that everything occurred on October 1, 2021. Those images were the justification to label Jeffrey Boone "a repeat and dangerous sex offender against minors."

A formal objection to the five-level enhancement was not lodged because there is case law, but defense counsel asked the Court to consider the very short period of time within which the images were sent, and the fact that it was the same victim (in the same outfit) in all three. But for the five-level "pattern" enhancement, Boone would be in guidelines level 39 with a recommended advisory range of 262-327 months (DE-42: 1-2).

Looking at the 3553(a) factors, Boone was an active-duty member of the Army at the time of his arrest, having served for more than five years. During his service Mr. Boone was deployed to Afghanistan. He experiences recurring night-mares related to his service. The victim was his daughter. The sexual contact did not include penetration, despite his seeming to suggest that such a video would be forthcoming on the date of his arrest. Mr. Boone has no prior criminal history. The conduct appears to be limited to a short period of time, especially as to the production

10

offense.  As a result of these charges, Boone's father refuses to speak to him.  His paternal grandmother and his sister both wrote letters to the Court in his support for sentencing (DE-165 (DE-42: 2).   The letter from his grandmother was attached as Exhibit A to the sentencing memorandum (DE-42-2).  While in the Army, Mr. Boone was awarded the Army Commendation Medal, Combat Commendation Medal, and Good Conduct Medal (DE-42: 3).

According to the sentencing memorandum Mr. Boone gave his attorney the names of several members of the military with whom he served over the previous five years.  Counsel contacted three of them.  After learning about the charges, no one was willing to write a letter to the court.  One told counsel that he was deployed with Mr. Boone to Afghanistan and that while there, Mr. Boone saved his life.  He said he had difficulty believing the allegations against Mr. Boone.  A second individual told counsel that he did work with Mr. Boone but could not write a letter in support.  This second individual and Mr. Boone were deployed together in Afghanistan, and they helped each other with their children when they lived at Fort Drum.   A third individual, a close friend of Mr. Boone in the Army, told counsel that he was he was "not comfortable" writing a letter to the Court (DE- 42: 3).

11

In the sentencing memorandum Mr. Boone requested a sentence below the current guideline range of 840 months, which would be equivalent to a life sentence for this 32-year-old. He also requested a recommendation for designation to a facility with mental health and sexual offender treatment (*Ibid.*).

### Grandmother's Letter to the Court

The letter from Mr. Boone's grandmother, in the record at DE-42-Ex.1, stated that Jeffrey Boone was a special young man. His parents divorced when he was one year old. His mother had custody. The grandmother "watched over him as much as I could." His father was married three times, and still is with his third wife. At around five years old, Jeffrey went to live with his father.

The father's new wife did not want Jeffrey. She had a son from her previous marriage. She wanted her own son, but not Jeffrey. He felt unwanted. He started working at age fourteen, after school, evenings, and weekends, to stay away from home where he was not wanted by his stepmother and probably not by his dad either.

Jeffrey wanted to make his own money to buy a vehicle. Grandmother was proud of him when he did. She wanted Jeffrey to move in with her, but he lived in another town where he had friends. He graduated high school in 2008. He met a girl. They dated, got married, and had a precious baby boy (their first child).

12

Jeffrey was an amazing father to the little boy.  They had two more children.
The children's mother, Jeffrey's wife is an amazing mother.  Jeffrey will always be
their proud father and always will love them.

Grandmother's letter continues that Jeffrey's wife has a serious health issue
and is receiving medical treatment, but Grandmother is concerned about whether she
will continue to have health insurance to cover the costs of treatment for her illness.

When Jeffrey enlisted in the Army, Grandmother was proud that he wanted to
serve his country.  He was a good soldier.   He took his career seriously and with
pride.  He had many friends.   Life was going well.  He was deployed to Korea in
2017-2018.  That tour of duty was good.  He made friends and was proud to serve
his country.

Then he was deployed to Afghanistan between 2019-2020, and that affected
him greatly and adversely.  He and his troops were "shot at all the time."  He
wondered if he would ever get home again to see his wife and children.  He prayed
often.  He was distraught.  Upon returning home, he could not get those feelings  out
of his mind and this where PTSD came in.   Grandmother believes that Jeffrey is a
victim of this terrible disorder as are thousands of military troops as well as non-
military personnel who were there, constantly being shot at.  She could understand
those feelings.

Jeffrey, she wrote, is "not a born fighter." He is a caring, thoughtful person. He would help friends, family, and anyone who needed help. He loved helping friends with their vehicles or with building things. He was an "all around good friend." He remembered how he was treated by people he loved, and he could never treat his family or friends the way he had been treated as a child.

PTSD complicated his life. He does not belong in prison. He needs help with his PTSD and should be close to his family. Hopefully he will be able to reconnect with the family and with his grandmother and sister. Grandmother believes that PTSD is the reason for his actions. He is a family man. He loves his children and his family. He would never harm is family. He is a friend, a father, an enlisted military man, a family man, and the best grandson anyone could have. Jeffrey is a God-loving man. Grandmother hoped her letter would assist the Court in deciding a sentence (DE-42-2, Exhibit A).

### *Sentencing Hearing*

Jeffrey Boone was sentenced on March 25, 2022 (DE-62: 1-20). The court said that it was required to consider several things in imposing a sentence, including the nature and circumstances of the offense and the defendant's history and characteristics. This case "is about as grave and serious as it gets." The court recognized that Mr. Boone had no criminal history and that he had been abused as

14

a child, but because this case involved abuse against his own very young child, "I don't accept that in mitigation."    The court could not accept that his childhood could mitigate or explain his conduct (DE-62: 10). There were no answers for this conduct "…here in this courtroom other than a very lengthy period of incarceration." (DE-62: 11).   The court added that when someone engages in this behavior when it was so uncharacteristic, it makes the person more dangerous "because people don't expect it and you fly under the radar."

> … you were a family man, military, good father, in all other respects, loved by your family, and just no one would be on the lookout for this, which makes me concerned about the community in the future.

(*Ibid)*.  The  court acknowledged defense counsel's argument that this all took place over a short period, just a day or two, but said that he took photographs and videos during that time, and but for the quick action by law enforcement, there likely would have been further abuse of the victim that evening (DE-62: 12).

And then contrary to longstanding precedent in considering mitigating factors at sentencing, his military service was (DE-62: 12) (emphasis added):

> … not a mitigator.  **It's an aggravator in my mind.**  You were someone who was in a position  of honor in the community, and that as well is something, again that raises my concerns about your future in the community because you were someone who no one would have expected to do something as heinous as this.

15

The court mentioned that had this case been prosecuted in the Florida State court system, it would be a capital offense with the possibility of a sentence of life without parole (DE-62: 12-14).    Because he had the presence of mind to video, photograph, distribute and chat about it, indicating his intent to continue the abuse, had it not been for quick action of law enforcement, the court found no reason to deviate from the recommended guidelines of 840 months (running the statutory maximum terms consecutively).

The court did say that if the pattern of activity enhancement had been incorrectly applied, then the guidelines range would be 262 to 327 months. **The top of the range, 327 months is the sentence that would be imposed should this Court on appeal conclude that the "pattern of activity" enhancement was applied incorrectly** (DE-62: 15).

16

## The Standards of Review

This Court reviews *de novo* the district court's interpretation of the guidelines and its application of the guidelines to the facts. *United States v. Moran*, 778 F.3d 942, 959 (11th Cir. 2015). This Court reviews the substantive reasonableness of a sentence under the deferential abuse of discretion standard. *Gall v. United States,* 552 U.S. 38, 41 (2007). A purely legal question regarding the Sentencing Guidelines will be reviewed *de novo*. *United States v. Vail-Bailon*, 868 F.3d 1293, 1296 (11th Cir. 2017) (*en banc*). This Court reviews the substantive and procedural reasonableness of a sentence for abuse of discretion, regardless of whether the sentence imposed is inside or outside the guidelines range. *Gall, supra; United States v. Villarreal*, 613 F.3d 1344, 1357 (11th Cir. 2010). Under this standard, "[a] district court's underlying legal conclusions are reviewed *de novo* and factual findings for clear error." *United States v. $70,670.00 in U.S. Currency*, 929 F.3d 1293, 1300 (11th Cir. 2019).

17

## SUMMARY OF THE ARGUMENT

A sentence of 327 months would be a very long, substantial sentence.  A sentence of 840 months is unimaginable.  Certainly 327 months would be more than sufficient to meet all goals of sentencing, including to maintain respect for the law, to serve as an example for others, to separate the offender from society, to be sufficient but not greater than necessary based on the nature and severity of the offense and the background and personal history of the person being sentenced.  The only thing that an 840-month will do that 327 will not, is to keep Mr. Boone separated from the rest of society for more than twice the number of years, and to leave him with no hope of ever again living outside prison walls as a free man.

It  must be noted that after serving his term in custody, if he survives it, Mr. Boone he will be a senior citizen.  As they age, human beings tend to "outgrow" their bad behavior.  He will be on lifetime supervised release, will be required to register as a sex  offender, will be closely and carefully monitored by the probation office.  He will be restricted in where he can work and live and travel, and he will be required to maintain a certain distance from places where children may be expected to be located such as schools, playgrounds, and parks.

The 840-month sentence imposed is cruel and excessive.   The pattern of activity enhancement had to be stretched beyond recognition and distorted to be

applied here.   Everything that occurred here was on October 1, 2021, including the first, second and third  Kik images sent to the undercover agent, to the investigation into the IP address, identifying and locating Mr. Boone, obtaining a search warrant, executing the warrant, seizing evidence, and arresting Jeffrey Boone.   To interpret three images of the same child in the same room with the same adult both in the same clothing (he wearing camouflage shorts, and the child in a distinctive outfit with pine trees on it) over such a relatively short period of time, is unfair, unjust, and a wildly overly-punitive misinterpretation and misuse of the "pattern of activity" enhancement.   It is as though someone possessed or produced a single video, but sent it over the internet frame by frame, and then US Probation determined that each frame depicted a separate incident for purposes of applying the "pattern of activity" enhancement.

Severe punishment clearly is warranted in this, and in comparable cases.  No one is disputing that.  But imposing unreasonably-excessive punishment is not warranted.   We are not living in Medieval times.  As a modern civilized society we do not throw miscreants into dungeons and subject them to physical and mental torture and abuse.  But then again, that is not unknown in our recent history.   We have more persons incarcerated *per capita*, than any civilized nation in the world.

19

When may we return to the more humane rehabilitative model rather than the purely

punitive model for dealing with those who violate the law?


## ARGUMENT AND AUTHORITIES

***It Was Reversible Error And an Abuse of Discretion (1) For the Court To Approve the The  Five-Level Offense Level Increase For "Pattern Of Activity" Pursuant to U.S.S.G. Section 2G2.2(b)(5)  Based  Two or Three Images Sent Via Internet all Involving the Same Victim in the Same Clothing at Around the Same Time; and (2) to consider Mr. Boone's Military Service as an Aggravating Rather than a Mitigating Factor in Determining his Sentence.***

Mr. Boone's presentence report provides the following in paragraph 48 on

page 13, entitled "Chapter Four Enhancement":

> 48.  The offense of conviction is a covered sex crime, neither Section 4B1.1 (career Offender), nor subsection (a) of Section B1.5 applies and the defendant engaged in a pattern of activity involving prohibited sexual conduct.  Therefore, the defendant is a repeat and dangerous sex offender against minors.   The offense level shall be 5 plus the offense level determined under Chapters Two and Three.  In this case the applicable offense level is 47.  USSG Section 4B1.5(b)(1).  The defendant engaged in a pattern of activity involving prohibited sexual conduct  when he produced child sexual abuse material on at least two separate occasions.  The defendant produced images/videos of the victim masturbating him and of him "slapping" his penis on the victim's vagina.

His offense level was 43 with a recommended advisory guidelines sentence

of 840 months, which was the total of the maximum for all  three  counts,  run  con-

secutively (360 months plus 240 months plus 240 months). The probation officer determined that the five-level enhancement for pattern of activity should be imposed, the government agreed, defense counsel did not formally oppose it because case law supports the enhancement, the district court agreed, and no one is saying that the offenses committed in this case were not heinous and horrible.

Nonetheless, Mr. Boone is a 32-year old man with no criminal record, no criminal history, not even a traffic citation. He was active military. He enlisted and served his country honorably for five years, deployed to Korea, and then to Afghanistan where he was subjected to conditions that no civilized human being should have to experience or suffer.

While in Afghanistan, not only did Boone report that he and his fellow troops were constantly under gunfire, but when a group of highly skilled US Army Special Forces officers were machine-gunned to death, Jeffrey Boone was part of the team assigned to remove their bullet-riddled bodies. He was emotionally scarred from that mission.

Although at the change of plea hearing he stated that he had no mental health issues, it is obvious to everyone including his grandmother and anyone else reading or hearing these facts, that he is suffering from war-related PTSD, which is likely

what changed this formerly friendly, loving family man into someone capable of doing such unthinkable, and illegal acts.

This is not an excuse, nor is it a mitigating factor, but it does provide a possible explanation of why and how this deviation from Jeffrey Boone's normal, law-abiding life as a military man, a good friend, and a family man, occurred. As heinous as these offenses were, however, a sentence of 70 years in prison is not likely to be any more rehabilitative than the thirty-year mandatory term for Count 1 would.

It surely will keep Mr. Boone separated from society and from other people and from his family probably for the rest of his life. Overly-excessive sentencing, warehousing people in facilities for decades, making them do what is tantamount to slave labor for 20 or maybe 40 cents per hour, as we do in this country, is beyond punitive. It is cruel, counterproductive, and non-productive. One may hope that the facility at Petersburg in Virginia has the capacity to provide mental health and sex abuse counseling programs that will help him overcome the mental and emotional issues that led to this unacceptable conduct.

A sentence of 327 months would be a very long, substantial sentence. A sentence of 840 months is unimaginable. Certainly 327 months would be more than sufficient to meet all goals of sentencing, including to maintain respect for the law, to serve as an example for others, to separate the offender from society, to be

22

sufficient but not greater than necessary based on the nature and severity of the offense and the background and personal history of the person being sentenced. The only thing that an 840-month will do that 327 will not, is to keep Mr. Boone separated from the rest of society, and to deprive him of even a glimmer of hope of ever living again outside prison walls as a free man.

And even at that, he will not be a "free man" because after serving his term in custody, if he survives it, Mr. Boone he will be a senior citizen. Psychologists tell us that human beings tend to "outgrow" their bad behavior as they age. In addition to the mental health and sex abuse counseling that he certainly should receive while in the custody of the Bureau of Prisons, Jeffrey Boone will be on lifetime supervised release, will be required to register as a sex offender, closely and carefully monitored by US Probation. He will be restricted in where he can work and live and travel, and he will be required to maintain a certain distance from places where children are expected to be located such as schools, playgrounds, and parks.

The offenses here are heinous, but the sentence imposed is cruel and excessive. The 4B1.1 "pattern of activity" enhancement had to be stretched beyond recognition to be applied here, because according to the indictment and the statement of facts, everything that occurred here happened on October 1, 2021. From the first Kik message to the FBI undercover agent, to the FBI investigation into the IP

23

address, identifying and locating Mr. Boone, obtaining a federal search warrant, executing the warrant at the Boone home, seizing evidence, and arresting Jeffrey Boone.   To use three images of the same child in the same room on the same day, with the same adult, and both adult and child wearing the same clothing in all of the images, over a relatively short period of time, is a misuse of the "pattern of activity" enhancement.  This was one incident, with three images captured and transmitted over a short period of time.

The court reversibly erred and abused its discretion in sentencing Jeffrey Boone, Jr., to 840 months in prison based on a five-level enhancement for "pattern of activity" because the "pattern" was three images on the same day, involving the same victim wearing the same distinctive outfit and within a very short time span.

If a perpetrator is producing images or videos depicting molesting different young children over a period of days or weeks, then yes, certainly there is a "pattern" of activity.   But what occurred here, albeit heinous and inexcusable, does not really fall within the definition of multiple incidents.  The time span between the images is not clearly defined in the indictment, nor in the factual proffer, but it appears that it all was part of one sordid incident occurring at one point in time.

The district court stated that if the "pattern of activity" enhancement were found to be improperly applied, then the recommended guidelines range  would  be

24

272 to 327 months.  With that recommended range, a sentence of 327 months, the top of the range, would be imposed.

A sentence of 327 months is a very long, severe sentence.   A sentence of 840 months is just unimaginable.   This Court  should find the "pattern enhancement to have been improperly and illegally applied.   The advisory range should be 272 to 327 months.  The judge said she would impose a sentence of 327 months.

This Court held in *United States  v. Fox*, 926 F.3d 1275 (11th Cir. 2019), that repeated sexual exploitation of a single victim is sufficient to meet the "pattern of sexual activity" under Section 4B1.5(b)(1).   The plain meaning of "separate occasions" does not require two events that are unrelated.  It requires only events that are independent and distinguishable from each other.  Multiple distinct instances of abuse – whether ongoing, related, or random, meet the 4B1.5 enhancement.  Earlier distinct conduct is one way that is sufficient to meet the requirements of Section 4B1.5(b)(1), but it is inapplicable here.   The three images are not multiple distinct instances of abuse.   They are different photos or images of one instance of sexual abuse. The enhancement launched Mr. Boone into a significantly higher advisory guidelines range which at best, is constitutionally troubling.

25

Finally, the court's determination that in this case Mr. Boone's honorable conduct serving in the Army for five years, including deployments to Korea and Afghanistan (a horrifying experience that resulted in PTSD), and Mr. Boone's status as active military was **an aggravating rather than a mitigating factor**, should be revisited and corrected as it was clear error in the consideration and weighing the Section 3553(a) factors.

## CONCLUSION

Wherefore, appellant respectfully asks the Court to vacate the sentence of 840 months and to remand the cause for resentencing with instructions to (1) remove the erroneously applied Section 4B1.5 "pattern of activity" enhancement; to (2) reconsider Mr. Boone's five years of honorable military service in the US Army as a **mitigating factor rather than an aggravating factor**, and thereupon to impose a new and reasonable sentence no greater than 327 months, taking these matters into consideration.

Respectfully submitted,,

*/s/ Sheryl Joyce Lowenthal*
Sheryl J. Lowenthal, Atty at Law
Counsel on Appeal for Mr. Boone
221 East Government Street
Pensacola, Florida 32502-6018
Phone: 850-912-6710
The Florida Bar No. 163475
E-Mail: sjlowenthal@appeals.net
26

CERTIFICATE OF WORD COUNT

I certify that the foregoing brief is prepared in Word for Windows, in 14-Point Times New Roman Font, and that the relevant portions of the brief contain no more than 5,634 words.


CERTIFICATE OF SERVICE & COMPLIANCE WITH ECF FILING

I CERTIFY that a copy of the foregoing Initial Brief with Certificate of Interested Persons was electronically filed with the Clerk of Court on this 22nd  day of August, 2022, and that a copy of this document will be served on this day on Assistant United States Attorneys Amanda Gordon, Robert G. Davies, and David L. Goldberg, and The United States Attorney Service for the Northern District of Florida, and to all counsel of record who may be registered with ECF in this matter.


*/s/ Sheryl J. Lowenthal*

Sheryl J. Lowenthal



North Florida Office:
221 East Government Street, Pensacola, Florida 32502-6018    850-912-6710

South Florida Office
9130 S Dadeland Blvd. Suite 1511    Miami FL 33156    305-670-3360